IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

HAROLD HAMILTON HODGE, JR.,
et al.                              :

:

v.                      :  Civil Action No. DKC 14-2829

:

COLLEGE OF SOUTHERN MARYLAND,
et al.                    :

**MEMORANDUM OPINION**

Presently pending and ready for review in this civil rights case are several motions to dismiss filed by Defendants College of Southern Maryland and its affiliated Defendants, Calvert County Local Government, Charles County Local Government, and the State of Maryland.  (ECF Nos. 15, 21, and 26).  The relevant issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motions to dismiss filed by Defendants will be granted.

## I.  Background

Plaintiffs Harold Hodge and Chante' Hodge, proceeding *pro se*, filed this action on September 5, 2014 against thirteen Defendants:  College of Southern Maryland ("CSM"); Dr. Bradley M. Gottfried, President of CSM; Sue Subocz, Vice President of Academic Affairs in CSM's Math Department; Loretta McGrath;

Richard B. Fleming; Jeffrey Potter; Richard Welsh; Matthew Schatz; Ricardo "Doe"; Charlie "Doe"; Calvert County Local Government; Charles County Local Government; and the State of Maryland. (ECF No. 1). Along with their complaint Plaintiffs filed motions to proceed *in forma pauperis,* which were granted. (ECF Nos. 2, 5, and 6). The complaint asserts multiple civil rights violations and other claims relating to events that occurred between 2009 and 2013 while Plaintiffs were enrolled as students at CSM. Plaintiffs seek $500,000 in compensatory damages from each individual Defendant, and $3,500,000,000 in exemplary damages for the injuries they purportedly suffered as a result of incidents described below. (ECF No. ¶ 128).

The crux of Plaintiffs' complaint is that Mr. Hodge received a final grade of "D" when he had purportedly earned a "C" in the entry-level math class that he was enrolled in during the spring 2013 semester at CSM. Mr. Hodge appealed his final grade seeking to have it changed to a "C" but Plaintiffs allege that the Vice President of CSM's Math Department, Sue Subocz, refused to change his grade, stating that Mr. Hodge had miscalculated his math grade and that his final grade of "D" was correct. (ECF No. 1, at 6-7). Thereafter, Mr. Hodge submitted multiple written complaints to various CSM administrators and the President of CSM, Bradley Gottfried, demanding that his grade be changed to a "C." These individuals allegedly did not

respond except for Ms. Subocz, who rejected his complaint that his math grade was incorrect. Plaintiffs assert that CSM and its administrators "racially discriminat[ed] and maliciously depriv[ed]" him of his final math score. (*Id.* ¶ 38). When Mr. Hodge's written complaints received no response, Plaintiffs allegedly filed official "intent to sue" notices with Defendants on September 19, 2013. (ECF No. 1 ¶ 36). Plaintiffs allege that because Mr. Hodge received a "D" in the math course, he was unable to transfer to a four-year University as he had planned, and Mrs. Hodge was required to delay her transfer to a four-year university as well because she refused to transfer without her husband. Plaintiffs allege that "in great humiliation" Mr. Hodge enrolled in an entry-level math course at Prince George's Community College ("PGCC") in January 2014 even though he had already passed the math course at CSM. Plaintiffs further allege that this math class was harder than the course at CSM and required Mr. Hodge to drive an hour to get to PGCC. Mr. Hodge allegedly passed the course at PGCC with a "C" grade, which enabled him to transfer to a four-year university with Mrs. Hodge. Plaintiffs assert that they began attending the University of the District of Columbia ("UDC") starting in August 2014 to work towards earning Bachelor of the Arts and Juris Doctor degrees. (*Id.* ¶ 47).

The complaint references a number of other unrelated incidents that occurred between 2009 and 2013 while Plaintiffs were enrolled as students at CSM. These other incidents also serve as a basis for the claims Plaintiffs assert. Only a relevant sampling of the incidents will be discussed here. Plaintiffs allege that in October 2009, CSM's librarian, Jeffrey Potter, "maliciously" threw away Mr. Hodge's math homework completion certification that was sitting on the library printer even though he knew that it belonged to Mr. Hodge. (ECF No. 1 ¶¶ 52-56). Mrs. Hodge, while attending a CSM sponsored field trip to the "Black Wax Museum" in Baltimore in October 2009, was "intentionally left in Baltimore" and the bus driver had to turn the bus around to go get her. (*Id.* ¶¶ 68-70). Mr. Hodge asserts that in January 2010 he checked his grades online and noticed that CSM had added to his grade report two classes from 1986 that Plaintiff never took, which caused his grade point average ("GPA") to drop from 3.5 to 1.7. Plaintiffs assert that CSM "falsely added and intentionally meant to damage" Mr. Hodge by adding these classes. (ECF No. 1 ¶ 63). Based on the these incidents and others referenced in the complaint, Plaintiffs assert that CSM was "a hostile and racially discriminatory environment for both [of them,] but they endured the environment because they had a right to be at (CSM) which was receiving Federal and state funds" for education. (*Id.* ¶ 73).

The complaint also cites several incidents in which CSM professors limited the Hodges' self-expression in the classroom. For example, Plaintiffs allege that in November 2010 CSM Professor Richard Welsh refused to let Mrs. Hodge express her opinions in class, and when Mr. Hodge mentioned that an African American woman was one of the first female pilots, Professor Welsh accused Mr. Hodge of lying. Plaintiffs assert that: "It was clearly understood that defendant Wel[s]h had a problem of her being an African American plane flyer. Moreover, at the end of the semester the defendant Welsh sent the plaintiffs an email and said: '*I hope that you and she find appropriate forum[s] for you to present your personal opinions.*' (*Id.* ¶¶ 66-67) (emphasis in original). Plaintiffs also assert that in October 2013 they took a class with CSM Professor Matthew Schatz.[1] Plaintiffs assert that Professor Schatz "maliciously skipped over the Civil Rights section of the text book and would not even attempt to teach on it" even though it was in the syllabus. (*Id.* ¶ 78). Plaintiffs also assert that at some point during a class discussion on welfare policy, Professor Schatz indicated that he "wanted to keep race out of the matter[.]" (*Id.* ¶ 78). They further allege that Professor Schatz "would allow 'white'

---

[1] The complaint identifies this professor as Matthew "Doe" but CSM Defendants provide that this professor's last name is Schatz.

students to express any view point they wanted, but he told the
Plaintiff Mrs. Hodge she could not and indirectly [told] [] Mr.
Hodge [the same thing.]  It got so bad in the class [that] the
'white' students were even trying to stop the plaintiff Mrs.
Hodge from stressing her view point[.]" (*Id.* ¶ 78).  Plaintiffs
assert that "this atmosphere was maliciously and racially
discriminatorily created by the (CSM) Welfare Policy
instructor." (*Id.* ¶ 78).

Plaintiffs' complaint asserts ten purported causes of
action arising from these events:  (1) violation of Plaintiffs'
Fourteenth Amendment rights to equal protection and due process;
(2) violation of the Equal Opportunity Act of 1995; (3) 42
U.S.C. § 1983; (4) race discrimination; (5) loss of consortium;
(6) intentional infliction of emotional distress; (7)
defamation-libel; (8) false light invasion of privacy; (9)
violation of the Family Educational Rights and Privacy Act of
1974; and (10) pain and suffering.

In three separate motions, Defendants moved to dismiss the
complaint on various grounds pursuant to Federal Rule of Civil
Procedure 12(b)(6).  (ECF Nos. 15, 21, and 26).  Plaintiffs
filed an opposition (ECF No. 34), and Defendant CSM replied (ECF
No. 36).

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S.

at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Finally, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nonetheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F.Supp.2d 391, 398 (D.Md. 2002), *aff'd*, 121 F.App'x. 9 (4th Cir. 2005) (unpublished).

## III. Analysis

Plaintiffs are no strangers to this court.  They have filed numerous civil lawsuits over the years in the United States District Court for the District of Maryland, including: *Hodge v. Stephens,* No. 12-cv-01988-AW, 2013 WL 398870 (D.Md. Jan. 31, 2013); *Hodge v. Bd. of Cnty. Com'rs,* No. RWT-10-2396, 2010 WL 4068793 (D.Md. Oct. 15, 2010); *Hodge v. Calvert Cnty,* No. PJM 09-2252, 2009 WL 2884928 (D.Md. Sept. 4, 2009); *Hodge v. St. Mary's Cnty. Sheriff's Office,* No. PJM 08-2522, 2009 WL 8708855 (D.Md. June 22, 2009); and *Hodge v. Taylor Gas Co.,* No. DKC-05-319, 2005 WL 5501493 (D.Md. June 21, 2005*).*

In the current suit, although Plaintiffs' complaint almost exclusively discusses their grievances with CSM, they have also

named several local county governments and the state of Maryland as Defendants. All Defendants have moved to dismiss under Rule 12(b)(6) for failure to state a claim. Because Plaintiffs are proceeding *in forma pauperis*, the court is also required to dismiss their case if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**A.   The County Defendants' Motion to Dismiss**

Plaintiffs state only one allegation in their complaint pertaining to Calvert County, Maryland and Charles County, Maryland local governments (the "County Defendants"). Plaintiffs assert that County Defendants violated Plaintiff Harold Hodge's Fourteenth Amendment rights by "turning a blind eye to Mr. Hodge's complaints" regarding his allegedly incorrectly reported math class grade. (ECF No. 1 ¶ 88). Plaintiffs assert a 42 U.S.C. § 1983 claim against the County Defendants based on this single allegation. (*Id.* ¶ 97). The County Defendants move to dismiss the complaint arguing that the it does not state any viable claims against them because it does not contain any factual allegations showing that the County Defendants "played any role in any of the events [] or that any of the named individual Defendants currently are or were at the time [of the events in question] local government employees." (ECF No. 15-1, at 2). In addition, the County Defendants contend that the complaint fails to state a proper § 1983 claim

based on the standard for municipal liability set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

Under the *Monell* standard, "a municipality can be found liable under 42 U.S.C. § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Municipalities are not liable under respondeat superior principles for the constitutional violations of their employees simply because of the employment relationship. *Monell*, 436 U.S. at 692-94. "Liability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News,* 743 F.2d 227, 229 (4th Cir. 1984), *citing Monell,* 436 U.S. at 694.

Here, Plaintiffs have not alleged that an unconstitutional policy or custom of the County Defendants resulted in Plaintiffs' purported injuries. Indeed, the only allegation pertaining to the County Defendants is the vague statement that the County Defendants violated Plaintiffs' rights by "turning a blind eye" to Mr. Hodge's complaints over his math grade. Plaintiffs' vague allegation is insufficient to state a plausible 42 U.S.C. § 1983 claim based on municipal liability, a

violation of Plaintiffs' Fourteenth Amendment rights, or any claim for that matter, against the County Defendants.

**B.   State of Maryland's Motion to Dismiss**

Similarly, Plaintiffs' only allegation regarding the State of Maryland is that it violated Plaintiff Harold Hodge's Fourteenth Amendment rights by "turning a blind eye to Mr. Hodge's complaints" regarding his allegedly incorrectly reported math grade. (ECF No. 1 ¶ 88). Plaintiffs assert a 42 U.S.C. § 1983 claim against the State of Maryland based on this single allegation. (*Id.* ¶ 97). The State of Maryland moves to dismiss the complaint for failure to state a claim against it because none of Plaintiffs allegations "relate to the activities of the State of Maryland, nor any of its employees." (ECF No. 26-1, at 3). In addition, the State argues that Plaintiffs' claims are barred due to the State's Eleventh Amendment immunity and sovereign immunity. (ECF No. 26).

As noted by the United States Court of Appeals for the Fourth Circuit in *Lee-Thomas v. Prince George's County Public Schools,* 666 F.3d 224, 248-49 (4th Cir. 2012):

> Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court "has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting

State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (internal quotation marks omitted). The States' immunity also extends to "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). "The Eleventh Amendment bar to suit is not absolute," however. *Feeney,* 495 U.S. at 304, 110 S.Ct. 1868. There are three exceptions to that constitutional bar.

First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (internal quotation marks and alterations omitted). . . . Second, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins,* 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004). . . . Third, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

Congress did not abrogate States' Eleventh Amendment immunity for 42 U.S.C. § 1983 claims. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65-66 (1989) (finding that a state is not a person within the meaning of § 1983 and that Eleventh Amendment bars § 1983 suits unless the state has waived its immunity). The second exception is inapplicable here because

Plaintiffs are not seeking any prospective injunctive relief, but instead only damages. Finally, the State of Maryland has not waived its Eleventh Amendment immunity in this case. Accordingly, the Eleventh Amendment bars Plaintiffs from bringing this suit against the State of Maryland.

### C.   College of Southern Maryland's Motion to Dismiss

Most of the allegations in the complaint involve actions taken by CSM's administrators, faculty, and other personnel. Plaintiffs assert numerous federal and state claims against the various CSM Defendants.[2] CSM Defendants have moved to dismiss Plaintiffs' claims on various grounds.

### 1.   No Private Causes of Action

CSM Defendants first argue that Plaintiffs' claims under the Fourteenth Amendment, the Family Educational Rights and Privacy Act of 1974 ("FERPA"), the Equal Opportunity Act of 1995, and Plaintiffs' claim for "pain and suffering" should be dismissed because the underlying amendment, statute, or state tort law does not provide a private right of action for these claims. (ECF No. 21-1, at 18-19).

The complaint asserts a direct right of action under the Fourteenth Amendment against all Defendants for allegedly

---

[2] CSM Defendants include: CSM, Dr. Bradley M. Gottfried, Sue Subocz, Loretta McGrath, Richard Fleming, Jeffrey Potter, Richard Welsh, Matthew Schatz, Ricardo "Doe," and Charlie "Doe."

violating Plaintiffs' due process and equal protection rights. The only relief sought by Plaintiffs in the complaint is compensatory and punitive damages.  Plaintiffs' direct right of action under the Fourteenth Amendment will be dismissed because the Fourteenth Amendment does not provide Plaintiffs with a private right of action to seek damages against state or municipal officials; rather, it provides a right of action for those seeking injunctive relief.  *See Farmer v. Ramsay,* 41 F.Supp.2d 587, 591 (D.Md. 1999) ("The Fourth Circuit has explicitly rejected the argument that an implied cause of action for damages exists under the Fourteenth Amendment.") (*citing Cale v. Covington,* 586 F.2d 311 (4th Cir. 1978)).  Plaintiffs may seek monetary damages for violations of their Fourteenth Amendment rights through 42 U.S.C. § 1983, which they have pled as their third cause of action.

Plaintiffs also seek relief under FERPA, alleging that CSM Defendants violated this Act because they failed to correct Mr. Hodge's inaccurate math grade.  FERPA also does not provide a private right of action; rather, it "provides for an aggregate action only:  the withdrawal of public institution funding for the impermissible release of student records."  *Henry's Wrecker Service Co. of Fairfax Cnty., Inc. v. Prince George's Cnty.,* 214 F.Supp.2d 541, 545 (D.Md. 2002).

14

In addition, Plaintiffs seek relief under the Equal Opportunity Act of 1995.  CSM Defendants note that although this bill was introduced on July 27, 1995 in the 104th Congress, it was never enacted.  Accordingly, it cannot provide a basis for the relief Plaintiffs seek.

Finally, the complaint asserts a cause of action for "pain and suffering."  It appears from the complaint that Plaintiffs included this "cause of action" merely to describe their purported injuries and the damages they are seeking.  To the extent they are trying to state a separate claim, no such cause of action exists.  "Pain and suffering" is a type of compensatory damages that plaintiffs may recover for certain tort claims, but is not an individual cause of action.  *See* Joseph H. King, Jr., Pain and Suffering, Noneconomic Damages, and the Goals of Tort Law, 57 SMU L. Rev. 163 (2004).

Following dismissal of the aforementioned claims, Plaintiffs' remaining federal claims are violations of their Fourteenth Amendment rights brought pursuant to 42 U.S.C. § 1983 and "race discrimination."  Plaintiffs do not specify under which statute they are bringing their race discrimination claim, but given the facts in the complaint, it will be construed as stating violations of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

## 2.   Statutes of Limitations

CSM Defendants contend that many of Plaintiffs' claims are time-barred by the applicable statutes of limitations.   CSM Defendants argue that Plaintiffs' federal claims are subject to either a three or four-year limitations period, and that Plaintiffs' state law claims are subject to a three-year limitations period, aside from the defamation claim, which has a one-year statute of limitations.

The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the claims are time-barred.   *Green v. Pro Football, Inc.,* 31 F.Supp.3d 714, 721-22 (D.Md. 2014).   Although 42 U.S.C. § 1983 does not contain a statute of limitations, courts borrow the statute of limitations from Maryland personal-injury suits, which have a three-year statute of limitations period.   *Owens v. Baltimore City State's Attorneys' Office*, 767 F.3d 379, 388 (4th Cir. 2014).   Similarly, Title VI does not have its own limitations period and courts therefore borrow Maryland's three-year limitations period.   *Jersey Heights Neighborhood Ass'n v. Glendening,* 174 F.3d 180, 187 (4th Cir. 1999).   Section 1981 claims have a four-year statute of limitations period if they arise under the 1991 Amendment to the Act.   *Jones v. R.R. Donnelley & Sons, Co.,* 541 U.S. 369, 382-84 (2004).   Here,

Plaintiffs' allegations — that they were subject to race discrimination by CSM administrators, faculty, and personnel — arise under the 1991 Amendment to the Act, as this conduct would not have been actionable under the pre-1991 version of § 1981 which covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *See Howard v. Feliciano*, No. 05-1928 (RLA), 2008 WL 3471295, *5-6 (D.P.R. Aug. 8, 2008) (finding that plaintiffs allegations that their "minor child was subjected to harassment by his math teacher because of his race to the point where he was given a 'C' grade when he deserved an 'A' grade" arose under the 1991 Amendment to § 1981). Finally, Plaintiffs' state law claims are subject to Maryland's three-year statute of limitations period for civil actions, Md. Code Ann., Cts. & Jud. Proc. § 5-101, accept for Plaintiffs' defamation claim which is subject to a one-year limitations period, Md. Code Ann., Cts. & Jud. Proc. § 5-105. Given these limitations periods and the dates of the incidents as provided in the complaint, any events that occurred prior to September 5, 2011 that underlie Plaintiffs' § 1983, Title VI, and state law claims are time-barred, and any events that occurred prior to September 5, 2010 that underlie Plaintiffs' § 1981 claim are time-barred. Specifically, the face of the complaint reveals that the following incidents cited in support of Plaintiffs'

claims are time-barred: CSM's librarian throwing away Mr. Hodge's printouts in October 2009; Mrs. Hodge being left behind on a CSM-sponsored field trip in October 2009; and the addition of two classes from 1986 to Mr. Hodge's grade report in January 2010. By the same logic, the other incidents referenced in the complaint, which are not specifically referenced in the facts section above, are also time-barred and cannot serve as a viable basis for Plaintiffs' claims.

### 3.  Local Government Tort Claims Act

CSM Defendants also contend that any claims arising from incidents that occurred after September 19, 2013 — the date on which Plaintiffs purportedly sent CSM Defendants a notice of intent to sue letter — should be dismissed because Plaintiffs failed to comply with the Local Government Tort Claims Act ("LGTCA"), which required Plaintiffs to provide notice to CSM within 180 days of these additional claims.[3] (ECF No. 21-1, at 23). Specifically, CSM Defendants point to the purported incident that occurred in October 2013 in Professor Matthew Schatz's class and CSM's transmission of Mr. Hodge's transcript

_____

[3] CSM Defendants note that although CSM is a State agency, it is also defined as a "local government" under the LGTCA. (ECF No. 21-1, at 22). Under the Maryland Code, Courts and Judicial Proceedings § 5-301(d)(9), Local government is defined to include "a community college or board of trustees of a community college established or operating under Title 16 of the Education Article[.]"

to PGCC and UDC,[4] and contend that Plaintiffs have not alleged that they sent a notice of a claim to CSM for any actions that took place after September 19, 2013.  (*Id.*).

Under the LGTCA, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury."  Md. Code, Cts. & Jud. Proc. § 5-304(b).  The notice itself "shall be in writing and shall state the time, place, and cause of the injury."  Md. Code, Cts. & Jud. Proc. § 5-304(b)(2).  Courts in this district have recognized that under the LGTCA, "notice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action."  *See, e.g., Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F.Supp.2d 599, 603 (D.Md. 2005).

---

[4] The complaint does not allege a date on which this event occurred, but Plaintiffs' defamation and invasion of privacy claims are premised on UDC and PGCC viewing Mr. Hodge's purportedly incorrect grade on transcripts that were received from CSM.  Mr. Hodge did not start attending PGCC until January 2014 and UDC until August 2014, accordingly, it is possible that the transmission of his transcript occurred after September 19, 2013.  Even if Plaintiffs' complied with the LGTCA as to these claims, as will be seen, Plaintiffs' allegations do not state plausible defamation or false light invasion of privacy claims.

Here, although Plaintiffs allege that they sent intent to sue notices to all Defendants on September 19, 2013, the complaint does not allege that they complied with the requirements of the LGTCA for any events following September 19, 2013. (*See* ECF No. 1 ¶ 36). As Plaintiffs' September 19 notification could not possibly have given CSM notice of their purported injuries arising from future events, Plaintiffs have failed plausibly to allege compliance with the LGTCA for any claims arising from events that occurred following September 19, 2013, which includes Plaintiffs' allegations regarding any incidents that occurred in October 2013 in Professor Matthew Schatz's classroom and the transmissions of Mr. Hodge's transcript to UDC and PGCC if it occurred after September 19, 2013.

### 4.  Failure to State Plausible Claims

After dismissing the causes of action for which no private right of action exists and excluding claims that are clearly time-barred or for which Plaintiffs failed to comply with the requirements of the LGTCA, only several claims remain. These claims are based on the following incidents: Professor Welsh's refusal to let Plaintiffs express themselves in his welfare policy class in November 2010; Mr. Hodge's receipt of the purportedly incorrect math grade in May 2013 and his dissatisfaction with the CSM's grade appeal process; and UDC and

PGCC viewing Mr. Hodge's purportedly incorrectly grade on a transcript received from CSM.

### a. 42 U.S.C. § 1983 Claim Premised on Violations of Plaintiffs' Fourteenth Amendment Rights

The complaint asserts that Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983. (ECF No. 1 ¶ 97). Although a claimant may use § 1983 as a vehicle for asserting violations of rights secured by the Constitution or other federal laws, it does not provide its own substantive protections. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) ("[O]ne cannot go into court and 'claim a violation of § 1983' – for § 1983 by itself does not protect anyone against anything."). The complaint also asserts that CSM Defendants violated Plaintiffs' Fourteenth Amendment rights, a violation which Plaintiffs may bring pursuant to § 1983.

Section 1983 authorizes a suit for damages against any individual "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." In order to state a claim under Section 1983, a plaintiff must allege: (1) a deprivation of a constitutional right or some right secured by the laws of the United States, and (2) that the deprivation was

caused by a state actor. *West v. Atkins,* 487 U.S. 42, 48 (1988).

Plaintiffs allege that Mr. Hodge was deprived of: "life, liberty, and [the same] equal protection as 'white' students [] at the college when he was deprived of his proper final letter grade in his math course." (ECF No. 1 ¶¶ 87, 97). The complaint also asserts that Mr. Hodge was deprived of "privileges and rights to an equal education as white students." (*Id.* at 99). The complaint names CSM Defendants in their official and unofficial capacities. (*Id.* ¶¶ 1-2).

CSM Defendants have moved to dismiss Plaintiffs' Fourteenth Amendment claims brought pursuant to § 1983, arguing that CSM is a state agency and its employees and administrators are state actors subject to Eleventh Amendment immunity for Plaintiffs' § 1983 claims against them in their official capacities. In addition, CSM Defendants contend that they are entitled to qualified immunity for Plaintiffs' Fourteenth Amendment claims against them in their individual capacities because Plaintiffs' have not alleged facts showing that individual Defendants violated clearly established constitutional rights of which a reasonable person would have known. (ECF No. 21-1, at 27). CSM Defendants further contend that Plaintiffs' allegations do not state a plausible violation of Mr. Hodge's procedural due process rights, as Mr. Hodge did not have a property interest in

earning a particular grade and therefore could not have been deprived of due process with respect to that alleged property interest, nor a plausible violation of his substantive due process rights because Plaintiffs have not alleged facts showing that CSM's actions concerning Mr. Hodge's grade and the appeals process departed so far from academic norms as to be arbitrary and capricious. Defendants further argue that Plaintiffs' allegations fail to state a plausible claim for violation of the Equal Protection Clause because Plaintiffs have not alleged any facts showing that similarly situated people were treated more favorably than Mr. Hodge or that CSM Defendants actions were in any way motivated by race.

In discussing Eleventh Amendment immunity in *Gray v. Laws,* 51 F.3d 426, 431 (4th Cir. 1995), the Fourth Circuit commented that:

> [Eleventh Amendment] immunity extends . . . to state agencies and other government entities properly characterized as "arm[s] of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *see also Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, ----, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993) ("[A] State and its 'arms' are, in effect, immune from suit in federal court."). Like the state itself, state officers acting in their official capacity are also entitled to Eleventh Amendment protection, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the

> official's office," and "[a]s such, it is no
> different from a suit against the State
> itself." *Will v. Michigan Dep't of State
> Police,* 491 U.S. 58, 71, 109 S.Ct. 2304,
> 2312, 105 L.Ed.2d 45 (1989) (citations
> omitted).

As recently noted by Judge Hollander in *Jenkins v. Kurtinitis,* No. ELH-14-01346, 2015 WL 1285355, at *8-9 (D.Md. Mar. 20, 2015), Maryland community colleges are treated as arms of the state. *Id.* (*citing Adams v. Montgomery Coll.,* No. DKC-09-02278, 2010 WL 2813346, at *4 (D.Md. July 15, 2010); *Williams v. Board of Trustees of Frederick Community College,* CCB-03-02123, 2004 WL 45517, at *4 (D.Md. Jan. 8, 2004)). Accordingly, Plaintiffs' § 1983 claims against CSM and CSM Defendants in their official capacities seeking monetary damages, are barred by the Eleventh Amendment.

Qualified immunity is an affirmative defense to Section 1983 claims and "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Two inquiries must be satisfied to determine whether an official is entitled to qualified immunity: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a

constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds in Pearson,* 555 U .S. at 236. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236. The burden is on the Plaintiff to prove that the alleged conduct violated the law, while Defendant must prove that the right was not clearly established. *Henry v. Purnell,* 501 F.3d 374, 377–78 (4th Cir. 2007). Finally, the court should make a ruling on the qualified immunity issue "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier,* 533 U.S. at 200.

Here, taking the allegations in the complaint as true, Plaintiffs have failed to establish a plausible violation of Mr. Hodge's rights to due process and equal protection. As noted by the Fourth Circuit in *Sunrise Corp. of Myrtle Beach v. City of Mrytle Beach,* 420 F.3d 322, 328 (4th Cir. 2005):

> To establish a violation of procedural due
> process, plaintiffs must show that (1) they
> had property or a property interest (2) of
> which the defendant deprived them (3)
> without due process of law. *Sylvia Dev.*

> *Corp. v. Calvert County, Md.,* 48 F.3d 810,
> 826 (4th Cir. 1995).   To establish a
> violation of substantive due process,
> plaintiffs must "demonstrate (1) that they
> had property or a property interest; (2)
> that the state deprived them of this
> property or property interest; and (3) that
> the state's action falls so far beyond the
> outer limits of legitimate governmental
> authority that no process could cure the
> deficiency." *Sylvia Dev. Corp.,* 48 F.3d at
> 827 (*citing Love v. Pepersack,* 47 F.3d 120,
> 122 (4th Cir. 1995)) (emphasis in original).

Plaintiffs have not established that Mr. Hodge had a protected property or liberty interest in receiving a "C" in his math course.   Moreover, Plaintiffs' conclusory assertion that Mr. Hodge was deprived of life, liberty, and an equal education to that of his white peers is unsupported by any facts.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.   This clause "'is essentially a direction that all persons similarly situated should be treated alike.'" *Sansotta v. Town of Nags Head,* 724 F.3d 533, 542 (4th Cir. 2013) (*quoting City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)).   "[T]o survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equality in*

*Athletics v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (*citing Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

Other than Plaintiffs' conclusory assertion that Mr. Hodge did not receive an equal education to that of his white peers, the complaint does not contain facts to support that Mr. Hodge's similarly situated peers were treated more favorably in the grading process or in the grading appeal process. Plaintiffs' conclusory assertions are insufficient to withstand a motion to dismiss because they do not show a plausible violation of Mr. Hodge's rights to due process or equal protection.

### b.   Race Discrimination Under Title VI and 42 U.S.C. § 1981

The complaint asserts a claim for "race discrimination" based on the allegations that Mr. Hodge's math professor racially discriminated against him by depriving him of the "C" grade he had purportedly earned in his math class. Plaintiffs allege that "'white' students at the College of Southern Maryland were not deprived of their final math letter grades as the plaintiff Mr. Hodge was whom is an African American." (ECF No. 1 ¶ 103). Plaintiffs also assert that Professor Welsh discriminated against them by depriving them of the right to express their opinions in class regarding why African Americans "lived in certain conditions and why they committed crimes," and

by mocking Mr. Hodge and accusing him of lying when he made statements about a famous African American pilot. (*Id.* ¶¶ 107-08). The complaint also asserts that CSM receives federal financial assistance. (*Id.* ¶ 73). Defendants move to dismiss these claims arguing that Plaintiffs have not alleged any facts indicating that racial bias motivated CSM's denial of Mr. Hodge's appeal of his grade, or motivated Professor Welsh's decision in how to conduct his class.

Under Title VI, no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of the person's race, color, or national origin. 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must allege facts that show the defendant intentionally discriminated against him on the basis of race, color, or national origin, and that defendant receives federal financial assistance. *Alexander v. Sandoval,* 532 U.S. 275, 280, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). 42 U.S.C. § 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens [.]" 42 U.S.C. § 1981(a). The statute broadly defines the term "make and enforce contracts" as "the making, performance, modification, and termination of

contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To state a claim under § 1981, a plaintiff must establish "purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). Thus, both Title VI and § 1981 require that plaintiffs plausibly allege intentional discrimination.

Plaintiffs' race discrimination claim will be dismissed because Plaintiffs' complaint provides only conclusory assertions devoid of factual support that Mr. Hodge's math grade and CSM's denial of his grade appeal were motivated by racial discrimination. Although Plaintiff believes based on his own calculation that he should have received a "C" grade in his math class, even if this assertion is true, his allegations do not provide a plausible inference that his math professor and CSM's administrators refused to correct his grade because of racial animosity. Moreover, Plaintiffs' allegations do not support that Professor Welsh refused to let them express their views in his class *because of* their race. Plaintiffs' allegation that Professor Welsh sent them an email at the end of the semester stating: "I hope that you and she find [an] appropriate forum for you to present your personal opinions" (ECF No. 1 ¶ 67), coupled with their allegations that Professor Schatz and

Plaintiffs' fellow students sought to prevent Plaintiffs from expressing their viewpoints in another class (*Id.* ¶ 78), provides an inference not of racial discrimination, but that Plaintiffs' expression of their viewpoints was either poorly timed or disruptive to the class. Taking all of Plaintiffs' factual allegations as true and excluding their speculative assertions that these actions were taken because of their race, the allegations do not provide a plausible inference that Plaintiffs were discriminated against by CSM Defendants on the basis of race.

### c.   Loss of Consortium

Plaintiffs' loss of consortium claim is based on their allegations that Mr. Hodge was deprived of time with his family as a result of having to travel to PGCC to take a math class he had already passed at CSM. (ECF No. 1 ¶ 112). In addition, Plaintiffs allege that they were deprived of being able to attend the same college for a period of six months. CSM Defendants have moved to dismiss this claim arguing that the complaint fails to allege the loss of a benefit of the marital relationship or an underlying injury to either spouse.

"A claim for loss of consortium arises from the loss of society, affection, assistance, and conjugal fellowship suffered by the marital unit as a result of the physical injury to one spouse through the tortious conduct of a third party." *Oaks v.*

*Connors,* 339 Md. 24, 33-34 (1995).   Plaintiffs' claim for loss
of  consortium  is  deficient  is  many  respects,  but  will  be
dismissed  because  the  complaint  does  not  allege  a  physical
injury to either spouse.

### d.    Intentional Infliction of Emotional Distress

Plaintiffs  allege  that  Defendants  intentionally  inflicted
emotional  distress  on  them  by  "depriving  them  of  their
education," depriving Mr. Hodge of his proper math grade, and
"not allowing them to express themselves in the classrooms while
attending CSM."   (ECF No. 1 ¶¶ 113-15).   CSM Defendants contend
that  Plaintiffs'  have  not  alleged  any  requisite  "extreme  and
outrageous"  conduct  by  them  in  order  to  establish  a  plausible
claim.

As  noted  by  Judge  Titus  in  *Vance  v.  CHF  Int'l.,*  914
F.Supp.2d 669, 682 (D.Md. 2012):

> In  order  to  succeed  on  an  intentional
> infliction  of  emotional  distress  claim,
> Plaintiffs must demonstrate (a) intentional
> or reckless conduct that is (b) outrageous
> and  extreme  (c)  causally  connected  to  (d)
> extreme  emotional  distress.   *See Caldor,*
> *Inc.  v.  Bowden,*  330  Md.  632,  641-42,  625
> A.2d 959 (1993).   Maryland courts "have made
> it  clear  that  liability  for  the  tort  of
> intentional  infliction  of  emotional  distress
> should  be  imposed  sparingly,  and  its  balm
> reserved  for  those  wounds  that  are  truly
> severe  and  incapable  of  healing  themselves."
> *Id*.  at  642,  625  A.2d  959  (quotation
> omitted).   "In  order  to  satisfy  the  element
> of  extreme  and  outrageous  conduct,  the
> conduct  'must  be  so  extreme  in  degree  as  to

> go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Mitchell v. Baltimore Sun Co.,* 164 Md.App. 497, 525, 883 A.2d 1008 (2005) (*quoting Batson v. Shiflett,* 325 Md. 684, 733, 602 A.2d 1191 (1992)). The emotional distress "must be so severe that 'no reasonable man could be expected to endure it.'" *Id.* (*quoting Harris v. Jones,* 281 Md. 560, 571, 380 A.2d 611 (1977)). "One must be unable to function; one must be unable to tend to necessary matters." *Id.* (quotation omitted).

The conduct of the CSM Defendants as alleged in the complaint is far from extreme and outrageous. Even if CSM Defendants intentionally gave Mr. Hodge a lower grade than he had earned, or intentionally restricted Plaintiffs' ability to express themselves fully in the classroom it would not exceed "all bounds of decency." Moreover, Plaintiffs have not alleged facts showing that the emotional distress they suffered as a result of this conduct rendered them dysfunctional.

### e.   Defamation and False Light Invasion of Privacy[5]

Plaintiffs assert a "defamation-libel" claim based on their allegation that the CSM Defendants wrote Mr. Hodge's "false" math grade on his transcript, which was in turn seen by UDC and

---

[5]   Plaintiffs advance both defamation and false light invasion of privacy claims. Plaintiffs' false light claim need not be assessed separate and apart from their defamation claim because "[a]n allegation of false light must meet the same legal standards as an allegation of defamation[,]" and Plaintiffs' allegations of defamation fail to state a claim. *Piscatelli v. Van Smith,* 424 Md. 294, 306 (2012).

PGCC and which purportedly reflected poorly on his character. (ECF No. 1 ¶ 117).  CSM Defendants move to dismiss this claim on several grounds, the first being that Plaintiffs' conclusory allegations fail to state a plausible defamation claim.

Libel is a branch of the tort of defamation, which covers acts of written defamation.  *Russell v. Railey,* No. DKC 08-2468, 2012 WL 1190972, at *3 (D.Md. April 9, 2012).  To state a claim for defamation in Maryland, a plaintiff must plead the following four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner,* 402 Md. 191, 198 (2007).  "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Offen,* 402 Md. at 198-99 (internal quotations omitted).

Plaintiffs' allegations do not state a plausible claim for defamation.  First, Plaintiffs fail plausibly to allege how the receipt of a grade on a transcript can be defamatory, as it is unlikely that any grade would engender hate or ridicule from the community especially when the only persons alleged to have viewed the grade are administrators at UDC and PGCC.  Second,

although Mr. Hodge believes he earned a "C" in his math class, CSM writing on his transcript that he received a "D" in the course would not be "false," as that is the grade Mr. Hodge acknowledges that he actually received at the end of the semester.   Third, Plaintiffs identify no injury that resulted from UDC and PGCC viewing Mr. Hodge's "D" grade; indeed, Plaintiffs' allegations show that Mr. Hodge was accepted as a student at PGCC and later at UDC despite these schools' officials viewing his purportedly "false" grade.

## IV.  Conclusion

For the foregoing reasons, the motions to dismiss filed by County Defendants, the State of Maryland, and CSM Defendants will be granted.  A separate order will follow.


<u>                    /s/                    </u>
DEBORAH K. CHASANOW
United States District Judge